E. W. BRUNO Co., INC., Respondent, v. ALAN FRIEDBERG et al., Appellants.

First Department, July 6, 1967.

*Arthur H. Schwartz* of counsel (*Stuart G. Schwartz* and *Sheldon W. Halpern* with him on the brief; *Schwartz & Frolich,* attorneys), for appellants.

*Michael K. Stanton* of counsel (*Edward C. Wallace* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for respondent.

EAGER, J. As a matter of law, the amount of recovery awarded to plaintiff may not stand. On the basis of the findings of the Referee and the record, the stated award is unsupported and should be modified.

The plaintiff was heretofore held entitled to have a recovery against the defendants for a breach of fiduciary duty by the defendant Friedberg as plaintiff's sales manager in secretly soliciting and appropriating his employer's business with respect to the importation and sale in this country of " Royal Sweden " hairbrushes. This court held that the recovery of damages was " the appropriate and adequate redress ". In this connection, the court set down the general criteria for

determining the damages to plaintiff: "The reparation to which plaintiff is entitled is 'the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct' (*Duane Jones Co.* v. *Burke,* 306 N. Y. 172, 192, *supra*). In other words, so far as profits are concerned, what is to be ascertained by the Referee is 'the amount which the plaintiff would have made except for the defendant's wrong' (*Santa's Workshop* v. *Sterling,* 2 A D 2d 262, 267, affd. 3 N Y 2d 757)". (*Bruno Co.* v. *Friedberg,* 21 A D 2d 336, 341.) The period for which the plaintiff's damages were to be computed was fixed from January 1, 1961 to December 27, 1963 (*Bruno Co.* v. *Friedberg, supra*).

The damages to be assessed against the defendants were those sustained by plaintiff as a result of the wrong done to plaintiff in the appropriation of its said "Royal Sweden" hairbrush business, and the amount of any award must rest upon evidence legitimately tending to establish the loss so resulting (see *Nichols-Morris Corp.* v. *Morris,* 174 F. Supp. 691, 699). Instead, however, of limiting the plaintiff's recovery to the loss directly resulting from the defendants' wrong, the Referee directed a recovery by plaintiff for the loss of anticipated profits based on its earnings from the over-all activities and business of its import department including business unrelated to its "Royal Sweden" hairbrush importation and sales.

It is true that, after losing the "Royal Sweden" distributorship and the services of the defendant Friedberg as sales manager of plaintiff's import department, the department was operated at a loss, whereas formerly it earned substantial profits. However, almost 50% of the total business of the import department consisted of the importation and sale of products other than the hairbrushes. There is no evidence in the record to support a finding that the diversion by defendants of the hairbrush distributorship caused or had reasonable relationship to the loss of alleged anticipated profits of the import department as a whole. Furthermore, it is well to note that the resignation by defendant Friedberg as sales manager was not in itself a wrongful act and that the plaintiff is not entitled to recover for a decrease in sales or a loss in profits occasioned by the loss of Friedberg's services and capabilities. Friedberg was under no long-term contract with plaintiff, but was hired under an employment contract terminable on two weeks' notice.

In furtherance of what was an erroneous premise for estimating plaintiff's damages, the Referee found that the plaintiff had earned an average annual net profit of 7.7% from all

of the gross business of its import department for the years 1958, 1959 and 1960. Then he concluded that the plaintiff was entitled to recover as damages the "7.7% of the projected gross of the combined net sales made by plaintiff [its import department] and by [the defendant] Montclair to plaintiff's former customers" for the years 1961, 1962 and 1963, or a total of $72,098.01, which he awarded to plaintiff with interest.

Certainly, the profits of the plaintiff in the operation of the import business as a whole prior to 1961 and the gross net sales and losses of such department after January 1, 1961 were contingent upon many factors unrelated and not chargeable to the wrong of defendants, namely, costs, margin of profits and selling expenses in connection with products other than hairbrushes, inventory price adjustments and efforts of and changes in personnel in charge of sales. (The defendant Friedberg and, also, six other employees of the plaintiff left its service and went to work with the defendant corporation.) Further, it appears that the plaintiff's import department for the three years, 1958–1960, showed a marked and constant decline in profits generally due to increased expenses in operation thereof. In the year 1960, the plaintiff's margin of profit had dwindled to 4.2%. So far as it appears from the record, the plaintiff was suffering a general decline in profits in the particular hairbrush business prior to the appropriation thereof by the defendants, and there is no evidence to support a finding that this downward trend in earnings would have reversed or even leveled off.

The plaintiff had the burden of proving by competent and sufficient evidence its loss of sales and consequent loss of profits arising from defendants' wrong. (*Dickinson* v. *Thum Co.*, 8 F. 2d 570, 575; *Michel Cosmetics* v. *Tsirkas*, 282 N. Y. 195, 202.) The plaintiff, as a basis for a proper recovery, was in a position to supply the proper detail and data necessary to fairly estimate the profits which it had earned and could expect to earn in connection with the sale of "Royal Sweden" hairbrushes. Without the proper proof, it was speculative for the Referee to find that, except for the wrong of the defendants, the plaintiff would have earned a net profit for the years 1961, 1962 and 1963 "of 7.7% of the projected gross of the combined net sales made by plaintiff [in its import department] and by [the defendant] Montclair to plaintiff's former customers".

The award to plaintiff should be substantially modified. In this case, it would not be possible and it is not necessary that the plaintiff's damages be established or fixed with mathematical certainty (see 13 N. Y. Jur., Damages, § 17). On the

basis of the record, we conclude that the sum of $32,500 with interest on one third thereof from December 31, 1961, interest on two thirds thereof from December 31, 1962 and interest on the whole amount thereof from December 31, 1963, represents a proper and supported award to plaintiff. The plaintiff shall have 30 days from the entry of the order hereon in which to stipulate that it shall accept a recovery in the reduced amount aforesaid; and in such event, the judgment should be modified accordingly, on the law and the facts, without costs and disbursements of this appeal to any party. In the event that plaintiff fails to so stipulate, the judgment herein is reversed and vacated, on the law, the facts and in the interests of justice, with costs and disbursements on this appeal to the defendants, and, on condition that plaintiff pays taxable costs and disbursements to date, the matter is remanded to the Referee, JOHN J. FOLEY, ESQ., for further evidence on the issue of damages in accordance with the determinations of this court, the Referee to render his supplemental report to Special Term and the parties to take such proceedings thereon as are authorized by law.

STEVENS, J. P., CAPOZZOLI, TILZER and McGIVERN, JJ., concur.

Judgment unanimously modified, on the law and on the facts, without costs and without disbursements of this appeal to any party, to the extent of reducing the award to the sum of $32,500 with interest on one third thereof from December 31, 1961, interest on two thirds thereof from December 31, 1962 and interest on the whole amount thereof from December 31, 1963. Plaintiff shall have 30 days from the date of entry of the order entered herein in which to stipulate that it shall accept a recovery in the reduced amount aforesaid; and, in such event, the judgment is modified accordingly. In the event that plaintiff fails to so stipulate, the judgment is reversed and vacated, on the law, the facts and in the interests of justice, with $50 costs and disbursements on this appeal to the defendants, and, on condition that plaintiff pays taxable costs and disbursements to date, the matter is remanded to the Referee, JOHN J. FOLEY, ESQ., for further evidence on the issue of damages in accordance with the determination of this court, the Referee to render his supplemental report to Special Term and the parties to take such proceedings thereon as are authorized by law.