**Robert B. CARROLL, Plaintiff–Appellant,**

v.

**UNITED STATES of America.**

**No. 06–2000–cv.**

United States Court of Appeals, Second Circuit.

Oct. 2, 2008.

**384**

Robert Bruce Carroll, Pro Se.

Allison D. Penn, Assistant United States Attorney, (Elizabeth Wolstein, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Defendants–Appellees.

Present: Hon. RICHARD C. WESLEY, Hon. PETER W. HALL, Hon. JOHN R. GIBSON,* Circuit Judges.

## SUMMARY ORDER

Appellant Robert Carroll appeals from the February 23, 2006 judgment by the United States District Court for the Southern District of New York (Lisa Margaret Smith, M.J.), in accordance with an oral decision issued on April 1, 2004, finding that doctors at the Castle Point Veterans

Administration Hospital (the "VA") committed malpractice by failing to properly diagnose herniated discs in Carroll's cervical spine, and awarding Carroll more than $200,000 in damages. *Carroll v. United States,* No. 06–0060 (S.D.N.Y. Feb. 23, 2006). On appeal, Carroll argues that, (1) the district court erred by refusing to reopen discovery to permit him to introduce the testimony of a vocational and an economic expert; (2) the district court erred in its assessment of loss of future income; (3) the district court erred in not finding him permanently disabled; (4) the district court erred in refusing to admit medical journals into evidence; (5) the district court should not have reduced his damages award due to injuries sustained prior to the VA's malpractice; (6) the district court failed to properly consider analogous cases in reaching its damage award calculations; (7) the district court erred by failing to include the period from December 1998 to the date of the award in its damage calculations; (8) the district court awarded an inadequate amount for pain and suffering; (9) the district court failed to award damages for loss of enjoyment of life; and (10) the district court erred in denying his post-trial motion for future medical expenses. We assume the parties' familiarity with the underlying facts and procedural history of the case.

First, Carroll's contention that the district court erred in refusing to reopen discovery is without merit. The decision not to reopen discovery is reviewed for abuse of discretion. *See In re Merrill Lynch Ltd. P'ship Lit.,* 154 F.3d 56, 58 (2d Cir.1998). A district court only abuses its discretion "when the discovery is so limited as to affect a party's substantial rights," and fails to "afford[ ] [the claimant] a

---

* The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by

designation.

meaningful opportunity to establish the facts necessary to support his claim." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir.2008). In this case, discovery was reopened before trial to allow Carroll to obtain an economic expert; however, the testimony of this expert was stricken at trial based on the magistrate judge's finding that his conclusions were based on faulty assumptions. Carroll's motion to reopen discovery did not include a request to reopen to obtain a vocational expert. As Carroll was given a fair opportunity to present his economic expert, and never made a request during trial to obtain a vocational expert, we find he was given a full and fair opportunity to support his claim with expert testimony. Thus, we find no abuse of discretion.

■ Second, the district court's determination that Carroll's future earning capacity should not be based on that of a physician's assistant or physician was not clearly erroneous. In a Federal Tort Claims Act case, this Court reviews a district court's factual findings for clear error. *See Korek v. United States*, 734 F.2d 923, 927 (2d Cir.1984). Damages are determined by the law of the state in which the tort occurred, in this case, New York. *See Ulrich v. Veterans Admin. Hospital*, 853 F.2d 1078, 1081–82 (2d Cir.1988). Under New York law, an award for loss of income must be established to a reasonable certainty given the plaintiff's earning capacity both before and after the accident giving rise to the suit. *See Clanton v. Agoglitta*, 206 A.D.2d 497, 499, 615 N.Y.S.2d 68 (2d Dep't 1994). Such an award cannot be based on mere conjecture alone. *See Bailey v. Jamaica Buses Co.*, 210 A.D.2d 192, 192, 620 N.Y.S.2d 257 (2d Dep't 1994). It is uncontested that Carroll never worked as a physician's assistant and never took the licensing exam necessary to practice medicine. Moreover, he has failed to support his claim that he was offered a position as a physician's assistant for the Bu-reau of Prisons in Danbury, Connecticut with any credible evidence. Nor has he shown that he accepted or worked in such a position. Thus, the magistrate judge's conclusion that Carroll's lost future earnings should not be based upon the earning capacity of a physician or physician's assistant was not clear error. *See Bailey*, 210 A.D.2d at 192, 620 N.Y.S.2d 257 (concluding that "undocumented, conclusory" claims of potential earnings were too speculative to support an award for lost earnings); *Kirschhoffer v. Van Dyke*, 173 A.D.2d 7, 10, 577 N.Y.S.2d 512 (3d Dep't 1991) (upholding an award for lost future earnings based upon the earning capacity of a teacher where the plaintiff demonstrated that there were jobs available in her local school district that required no further training or education). Further, the magistrate judge did not err in striking the testimony of Carroll's economic expert because it was based on the speculative assumption that Carroll would have worked as a physician's assistant had he not been misdiagnosed by the doctors at the VA. *See Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (stating that expert testimony on the issue of lost future earnings should be excluded if based on unrealistic or unsubstantiated assumptions as to the plaintiff's future employment prospects).

■ Third, the district court's finding that Carroll was presently able to work at an ability reduced by 35% is supported by the trial record. Carroll himself testified that after his surgery he felt better and planned to start working again, at least part time. In addition, he failed to introduce any evidence in the record tending to show that he was completely unable to work. Thus, the district court did not err in finding that Carroll was presently able to work at a reduced ability.

■ The district court's finding that Carroll's injury partially preexisted the VA's malpractice is also supported by the evidence. *See Kirschhoffer*, 173 A.D.2d at 9, 577 N.Y.S.2d 512 (stating that plaintiffs may only recover for those injuries actually caused by defendants' negligence); *Mihileas v. State*, 266 A.D.2d 866, 866, 697 N.Y.S.2d 891 (4th Dep't 1999) (holding that a plaintiff with a preexisting condition may only recover for "increased pain and suffering caused by [the] defendant's acts"). Both Carroll's trial testimony and his medical records reflect that he experienced symptoms a year before he sought treatment at the VA, and his expert corroborates that the VA misdiagnosis was not the sole cause of the harm he suffered. Thus, the district court's reduction of Carroll's award to account for his preexisting condition is supported by the evidence in the record.

■ Fifth, we find that the district court's award for pain and suffering is not so inadequate as to shock the conscience. *See Korek*, 734 F.2d at 929 (stating that a district court's award for pain and suffering will only be overturned if it is so inadequate as to "shock the court's conscience"); *see also Robinson v. United States*, 330 F.Supp.2d 261 (W.D.N.Y.2004) (awarding $250,000 for pain and suffering in a case involving similar back pain, spasms, numbness, and work restrictions). As discussed above, the magistrate judge correctly discounted Carroll's award because of his preexisting injury. In addition, she examined and relied upon Carroll's medical records and testimony to quantify the extent of his harm. Carroll's claims regarding unaccounted-for physical and emotional symptoms are not included in the trial record and, thus, may not be considered on appeal.

■ Next, we find that Carroll is not entitled to post-judgment interest because he, and not the Government, initiated this appeal. *See* 31 U.S.C. § 1304(b)(1)(A) ("Interest may be paid ... only when the judgment becomes final after review on appeal or petition by the United States Government."). Further, the district court did not err in failing to award damages for loss of enjoyment of life because New York does not permit such an award separate from the pain and suffering award. *See McDougald v. Garber*, 73 N.Y.2d 246, 256–57, 538 N.Y.S.2d 937, 536 N.E.2d 372 (1989).

As to Carroll's remaining claims, they are based upon factual or legal allegations never made at trial and, therefore, not a part of the record. As such, we may not review these claims on appeal.

Finally, the Government correctly notes that the magistrate judge committed mathematical errors in calculating the damage award. Because the magistrate judge explained how each portion of the award should be determined, we need not remand to fix these errors. First, in calculating past pain and suffering, the district court incorrectly calculated the final payment for December 1998 to be $340; however, correctly calculated ($40 a month with an additional $4 a month for 82 months), the final payment should be $368. Second, the district court used its incorrect final monthly payment for pain and suffering ($340) to calculate damages for future pain and suffering and future emotional distress. Had the court used the correct, $368 figure in this calculation, the total amount of future pain and suffering (one half of $368 plus one half of the emotional distress payment ($250) times 27.4 years) is $101,599.20. Properly discounting that sum to its present value (applying a discount rate of 2% over 27.4 years), the total award for future pain and suffering is $78,126.01. Third, the district court neglected to award lost past wages for the time from after Carroll's surgery through

the court's award (May 1999 through April 1, 2004). Extending the district court's pre-surgery annual lost wages ($10,886.73 per year) through the pre-trial period, reduced by Social Security benefits Carroll received during those years, yields an additional award of $23,661.72 for Carroll's lost wages (a total of $53,526.42 in lost wages, less $29,864.70 received in disability payments).

Finally, Carroll is correct in noting that the district court failed to award damages for pain and suffering and emotional distress for the period from December 9, 1998 (the date of his surgery) to April 1, 2004 (the date of the district court's award). Based on the district court's findings, he should have received damages for that period. As set forth above, the correct monthly payment for past pain and suffering for December 1998 is $368. Therefore, calculating the damages at the rate of half of the amount of pre-surgery pain and suffering ($184 per month), for a period of 63.71 months, Carroll is entitled to additional pain and suffering damages in the amount of $11,722.64 for the omitted period. He is also entitled to damages for his emotional distress during this period, amounting to an additional $9,653.75 in damages (post-diagnosis emotional distress rate of $125 times 77.23 months (the period from October 1997, when he was correctly diagnosed, to April 1, 2004, the date of the district court's award)). Incorporating these corrections, Carroll's award totals $252,030.76.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED with modifications resulting in a total award of $252,030.76.